IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| BURL WASHINGTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:13-cv-613-NJR-DGW |
| ) | |
| DAVID GOLDSBOROUGH, STEVEN ) | |
| HOFFIMEIR, FRANK FESTER, JASON ) | |
| JONES, and B. AUTERSON, ) | |
| ) | |
| Defendants. ) | |

### REPORT AND RECOMMENDATION

**WILKERSON, Magistrate Judge:**

This matter has been referred to United States Magistrate Judge Donald G. Wilkerson by United States District Judge Nancy J. Rosenstengel pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and SDIL-LR 72.1(a) for a Report and Recommendation on the question of whether Plaintiff exhausted his administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act, 28 U.S.C. § 1997e(a).  For the reasons set forth below, it is **RECOMMENDED** that the Motions for Summary Judgment filed by Defendants Frank Fester, Jason Jones, B. Auterson (Doc. 33), David Goldsborough (Doc. 53), and Steven Hoffmeier (Doc. 60) be **GRANTED**, and that the Court adopt the following findings of fact and conclusions of law.

#### INTRODUCTION

Plaintiff Burl Washington is an inmate in the custody of the United States Bureau of Prisons currently incarcerated at Williamsburg Federal Correctional Institution.  On July 30, 2012, Plaintiff filed a lawsuit pursuant to *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971) bringing forth claims arising from his incarceration at the Federal Correctional Institution

in Greenville, Illinois ("FCI Greenville"). District Judge G. Patrick Murphy screened Plaintiff's Complaint and severed Plaintiff's claims into three different cases. Pursuant to Judge Murphy's Order, the claims pending in this lawsuit are as follows:

> Count 8A: Retaliation claim against Defendants Goldsborough, Hoffmeier, Fester, and Jones related to events occurring March 16-22, 2012 while Plaintiff was hospitalized following outpatient glaucoma surgery.
>
> Count 8B: First Amendment claim against Defendants Goldsborough, Hoffmeier, and Jones for interfering with Plaintiff's First Amendment right to correspond with friends and family by confiscating written materials, paper, pens, and envelopes.
>
> Count 8C: Claim of deliberate indifference to a serious medical condition against Defendants Goldsborough, Hoffmeier, Jones, and Fester for intentionally confiscating Plaintiff's eyepatch and against Defendants Jones and Fester for turning the air conditioner down against medical orders.
>
> Count 8D: Excessive force claim against Defendant Fester for striking Plaintiff on the back and head.
>
> Count 11A: Retaliation claim against Defendant Goldsborough for filing a false disciplinary charge due to Plaintiff showing a document to his doctor.
>
> Count 12A: Retaliation claim against Defendant Auterson for finding Plaintiff guilty of a false disciplinary charge due to Plaintiff showing a document to his doctor.

These claims relate to Plaintiff's hospitalization at Barnes Hospital ("Barnes") from March 16 to March 22, 2012, to address complications that arose after his glaucoma surgery on March 15, 2012. Plaintiff alleges that while at Barnes, he was told by several correctional officers they had been advised that Plaintiff was a "problem inmate" because he filed past complaints related to staff misconduct. Plaintiff claims that during his hospitalization defendant correctional officers took various actions, including denying him access to the bathroom, confiscating his writing materials and eye patch, turning down his air conditioner, striking him

on his back and head, and filing a false disciplinary charge against him, all in retaliation for his past conduct.

On September 10, 2014, Defendants Fester, Jones, and Auterson filed a motion for summary judgment (Doc. 33) arguing Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Defendant Goldsborough and Defendant Hoffmeier adopted the motion for summary judgment filed by Fester, Jones, and Auterson on December 1, 2014 (Doc. 53) and December 31, 2014 (Doc. 60), respectively. Through is recruited attorney, Plaintiff timely responded to each Defendant's motion (*see* Docs. 50, 55, and 64). On January 6, 2015, a hearing was held on Defendants' Motions pursuant to *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), in which Plaintiff appeared by video-conference and testified about his efforts to exhaust grievances filed in relation to this matter.

### FINDINGS OF FACT

As indicated above, the events giving rise to this action relate to Plaintiff's hospitalization at Barnes from March 16 to March 22, 2012, wherein Defendants allegedly took actions in retaliation for Plaintiff's filing grievances complaining of staff misconduct. A review of the grievances submitted in this matter reveals that the following seven grievances filled out by Plaintiff may be related to the allegations in this suit: ## 681576, 682036, 683634, 684572, 685752, 686319, 693952, and 694011.

1. *Grievance 681576 (Def. Ex. D, Doc. 33-4, pp. 2-10)*

In this grievance, dated March 22, 2012, Plaintiff complains that Goldsborough, Hoffmeier, Jones, Fester, and "one other" correctional officer interfered with his medical treatment and lost his necessary eye-patch, issued by the hospital after surgery, between March

19 and 22, 2012. Plaintiff also complains that these officers disregarded direct medical orders by subjecting Plaintiff to cold weather conditions, and interfered with his doctor-patient communications. The warden responded to this grievance on April 3, 2012 (indicating that the allegations would be investigated) and Plaintiff appealed to the Regional Director on April 8, 2012. In his appeal, Plaintiff complains about being assaulted and robbed of medical equipment by Goldsborough, Hoffmeier, Fester, and Jones. The Regional Director responded on April 25, 2012 (concurring with the warden) and Plaintiff appealed to the Central Office (i.e. General Counsel) on June 21, 2012. The Central Office returned the first appeal (received on August 7, 2012), directing Plaintiff to indicate why the appeal was untimely. The Central Office received a subsequent appeal on October 25, 2012, to which it responded, on the merits, on November 27, 2012.

   2. *Grievance 682036 (Def. Ex. E, Doc. 33-5, pp. 2-5)*

This grievance, dated March 22, 2012, is labeled "sensitive" and directed to the Regional Director. Plaintiff complains that between March 18 and March 22, 2012, officers Goldsborough, Hoffmeier, Jones, and Fester acted in an unprofessional manner by interfering and disrupting his medical care. Specifically, Plaintiff complains that these officers lost his eye patch, disregarded direct orders from Barnes medical staff, subjected him to cold weather conditions, and interfered with his doctor-patient communications. The Regional Director rejected this grievance on March 29, 2012, finding that it was not sensitive, and directed Plaintiff to file an appeal or seek remedies through the "regular procedure." Plaintiff appealed the rejection to the Central Office, which affirmed the Regional Director's rejection (Declaration of Heather MacConnell, Doc. 33-11, ¶ 6).

### 3. *Grievance 683634 (Def. Ex. F, Doc. 33-6, pp. 2-14)*

In this grievance, dated April 5, 2012, Plaintiff alleges that Mrs. Lirios wrote false statements to support an incident report against Plaintiff. The warden responded to this grievance on April 17, 2012 (indicating the allegations would be investigated), and Plaintiff appealed to the Regional Director on April 22, 2012. The Regional Director responded on May 18, 2012, and Plaintiff appealed the response to the Central Office on July 18, 2012. The Central Office received Plaintiff's grievance on July 25, 2012, and issued its response on April 25, 2013.

### 4. *Grievance 684572 (Def. Ex. G, Doc. 33-7, pp. 2-7)*

In this grievance, dated April 10, 2012, Plaintiff complains of the loss of medical equipment (presumably his eye patch) in March, 2012, interference with an April 11, 2012 doctor's appointment where he was slated to be escorted by Defendant Fester, and general interference with his medical treatment. Plaintiff does not name any particular person as causing him injury, but refers generally to "Greenville Staff." The warden responded to this grievance on April 24, 2012 (indicating the allegations would be investigated), and Plaintiff appealed to the Regional Director on April 28, 2012. The Regional Director responded on May 24, 2012 (concurring with the warden). There is no credible indication in the record that Plaintiff appealed this grievance to the Central Office.

### 5. *Grievance 685752 (Def. Ex. H, Doc. 33-8, pp. 2-5)*

This grievance, dated March 22, 2012, was sent directly to the Central Office, as Plaintiff indicated that his complaint was "too sensitive to file with the warden and with the region." Plaintiff complains that officers Goldsborough, Hoffmeier, Jones, and Fester acted in an unprofessional manner while he was at Barnes Hospital between March 18 and 22, 2012.

Specifically, Plaintiff complains that the officers lost his medical equipment (eye patch), disregarded direct medical orders and subjected Plaintiff to cold weather conditions, and interfered with his doctor-patient communications. The Central Office received Plaintiff's grievance on April 10, 2012, and rejected it on April 24, 2012, finding that the issue raised was not sensitive. Plaintiff was advised to file a request or appeal at the appropriate level via regular procedures; however, no such appeal or request is in the record before the Court.

### 6. *Grievance 686319 (Def. Ex. I, Doc. 33-9, pp. 2-5)*

This grievance, dated April 21, 2012, is labeled "sensitive" and directed to the Regional Director. Plaintiff complains that Capt. Baugh and Warden Cross prevented him from attending an April 20, 2012 doctor's appointment by requiring that he be escorted with a particular officer (i.e. Fenton). Plaintiff also indicates that he fears for his safety in the presence of officers Hodges, Dothager, Goldsborough, Hoffmeier, Fester, Jones, and others. Plaintiff complains that these officers assaulted him, interfered with communications between him and his doctor, lost his medical equipment (presumably his eye patch), and filed false incident reports against him. The Regional Director rejected this grievance on April 27, 2012, finding that it was not sensitive, and directed Plaintiff to file an appeal or seek remedies through the "regular procedure." Plaintiff appealed to the Central Office on June 21, 2012, which responded on July 23, 2012 (concurring with the Regional Director).

The Court notes that attached to Plaintiff's complaint is a grievance dated April 21, 2012 with the notation "should be" … "686319-F1" at the bottom of the page (Doc. 2-3, p. 14). This grievance is not identical to the grievance submitted to the Regional Director and bearing the same identification number, nor has the grievance been filed stamped. Accordingly, there is no

indication in the record that this document was appealed to the Regional or Central Offices.

### 7. *Grievance 694011 (Pl. Response, Doc. 50, pp. 11-17)*

In this grievance, dated June 14, 2012, Plaintiff complains that Unit Manager Robinson and Warden Cross retaliated against him for filing grievances by transferring him to a more restrictive prison. The warden responded on July 2, 2012, denying the grievance. Plaintiff appealed to the Regional Director on July 6, 2012. It is unclear whether, and when, the Regional Director received this appeal. Plaintiff filed another appeal to the Regional Director in November, 2012. Plaintiff's appeal was received on February 11, 2013 and the Regional Director denied Plaintiff's grievance on March 5, 2013. Plaintiff appealed that decision to the Central Office on March 12, 2013, and the Central Office issued its response on September 3, 2014.

*Pavey Hearing*

At the hearing held on January 5, 2015, Plaintiff made two primary arguments concerning exhaustion. First, Plaintiff explained that he filed a grievance on April 21, 2012, which, as mentioned above, included a notation by Plaintiff that it "should be case number 686319-F1." According to Plaintiff, he filed this grievance complaining about the events at issue in this lawsuit after filing a similar grievance on April 10, 2012, for which he never received a response. Plaintiff testified that although he properly submitted this grievance, the institution failed to address it. As such, his attempts at exhaustion were thwarted. Second, Plaintiff testified that the administrative process was not made available to him between April 21 and July 31, 2012. Plaintiff explained that on April 30, 2012 he was transferred to the Federal Transfer Center in Oklahoma and, on May 24, 2012, he was transferred to an institution in Kentucky.

During this period, Plaintiff avers he continued to send grievances inquiring about the grievances he submitted on April 10 and April 21, 2012, but his grievance was rejected and he never received a response to his April, 2012 grievances.

Plaintiff also contended that, for purposes of determining whether he fully exhausted grievances prior to filing suit, the Court should consider the date this particular case was severed and separately filed as the operative date for determining whether Plaintiff properly exhausted his administrative remedies.

## CONCLUSIONS OF LAW

### *Summary Judgment Standard*

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex,* 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated

that summary judgment "is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005) (other citations omitted)).

*Exhaustion Requirements under the PLRA*

The Prison Litigation Reform Act provides:

> No action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). *See also Perez v. Wis. Dept. of Corr.*, 182 F.3d 532, 534-535 (7th Cir. 1999) (stating that §1997e(a) of the PLRA "makes exhaustion a precondition to bringing suit" under § 1983). Failure to exhaust administrative remedies is an affirmative defense; defendants bear the burden of proving a failure to exhaust. *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Dole v. Chandler*, 483 F.3d 804, 809 (7th Cir. 2006). The Supreme Court has interpreted the PLRA to require "proper exhaustion" prior to filing suit. *See Woodford v. Ngo*, 548 U.S. 81, 84 (2006). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Id.* at 90, (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). In finding that the PLRA requires proper exhaustion, the Supreme Court agreed with the Seventh Circuit's interpretation of the statute as stated in *Pozo*, which required an inmate to "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. In *Pavey*, the Seventh Circuit instructed District Courts to conduct a hearing to determine whether a Plaintiff

Page **9** of **17**

has exhausted his remedies. *Id.* 544 F.3d at 742. If a Plaintiff has exhausted his remedies, the case will proceed on the merits. If, however, a Plaintiff has not exhausted, the Court may either allow Plaintiff to exhaust or terminate the matter.

*Exhaustion Requirements under Federal Law*

Federal prisoners must exhaust administrative remedies by following the guidelines set by the Bureau of Prisons. *See* 28 C.F.R. § 542.10, et seq. Generally, an inmate incarcerated in a federal prison must take the following four steps to exhaust his administrative remedies. First, he must attempt to resolve his grievance informally with the prison's staff. 28 C.F.R. § 542.13. Second, after trying to resolve his concerns informally, he may submit a written Administrative Remedy Request (Form BP-9) to the Warden. 28 C.F.R. § 542.14. These first two steps must be performed within 20 days of the incident about which the inmate complains. *Id.* Third, if his administrative remedy request is denied, he may appeal it to the appropriate Regional Director by submitting a Form BP-10. 28 C.F.R. § 542.15. And fourth, if the inmate is unsatisfied with the Regional Director's response, he may appeal that decision to the General Counsel (i.e. Central Office) (Form BP-11). *Id.* While this four-step process is the normal route an inmate must utilize to exhaust his administrative remedies, if the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if his administrative request became known at the institution, he does not have to send his administrative request to anyone at the prison. 28 C.F.R. § 542.14(d)(1). Instead, he can mark the request "Sensitive," explain why he did not submit his request to the prison, and send it directly to the appropriate Regional Director. *Id.* If the Regional Director finds that the request is not sensitive, the inmate must submit his grievance to the institution for consideration. *Id.*

An inmate is required to exhaust only those administrative remedies available to him. *See* 42 U.S.C. § 1997e(a). The Seventh Circuit has held that administrative remedies become "unavailable" when prison officials fail to respond to inmate grievances. *Lewis v. Washington*, 300 F.3d 829, 833 (7th Cir. 2002); *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). The availability of a remedy does not depend on the rules and regulations as they appear on paper, but on "whether the paper process was in reality open for the prisoner to pursue." *Wilder v. Sutton*, 310 Fed.Appx. 10, 13 (7th Cir. 2009). If further remedies are unavailable to the prisoner, he is deemed to have exhausted. *Id.* Prisoners are required only to provide notice to "responsible persons" about the complained-of conditions. *See Wilder*, 310 Fed.Appx. at 15 (citing *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)). An inmate forfeits the grievance process, however, when he causes the unavailability of a remedy by not filing or appealing a grievance. *See Kaba*, 458 F.3d at 684.

*Discussion*

Defendants argue that Plaintiff either failed to grieve or failed to exhaust a grievance prior to filing suit as to each of the six claims in this lawsuit. While each grievance will be addressed specifically below, Plaintiff's general arguments concerning his efforts at exhaustion should be addressed at the outset.

First, the Court does not find Plaintiff credible in his assertion that the grievance process was unavailable to him from April 21, 2012 through July 31, 2012. Based on the evidence before the Court, it is apparent that Plaintiff is an inmate experienced in the grievance process. Plaintiff filed numerous grievances and appeals of those grievances from 2009 through 2013 (*see* Def. Ex.'s C, Doc. 33-3). Importantly, many of the grievances on the record were either filed or

appealed during the time period in which Plaintiff testified that the process was not available to him (*see* Docs. 33-4, 33-6, and 50). Moreover, Plaintiff was not able to articulate the precise manner in which the grievance process was made unavailable. When pressed by the Court, Plaintiff explained that from April 30, 2012 through June, 2012, he was being transferred to different institutions and was not receiving responses to his grievances. However, the record evidences that Plaintiff received responses to at least some grievances filed during this period, as he was able to file various appeals during this time. Further, it has been demonstrated that Plaintiff is knowledgeable about the grievance process and aware of the steps he must take in order to exhaust his administrative remedies. Plaintiff presented no grievance or document wherein he complained that he was not able to fill out any grievances, that he was being deprived of grievance forms, or that he was not receiving answers to grievances that he filed. Nor is there any credible evidence that he sought assistance from the institutions where he was housed to fill out or submit any grievance or appeal.

Plaintiff next argues that the date of severance should be used as the "filing" date for purposes of exhaustion. This argument, while creative, is a non-starter. In *Ford v. Johnson*, 362 F.3d 395 (7th Cir. 2004), the Seventh Circuit Court of Appeals held that, for purposes of 28 U.S.C. § 1997e(a), mailing a complaint to the Court was sufficient to bring suit. *Id.* at 399. As such, whether the complaint was screened at a later date pursuant to 28 U.S.C. § 1915A, whether Plaintiff paid his filing fee or was granted *in forma pauperis* status pursuant to 28 U.S.C. § 1915 after submitting his complaint, or whether the action is severed pursuant to the PLRA, the date that Plaintiff submitted his Complaint to the Court for filing is the operative date in determining whether Plaintiff exhausted his administrative remedies prior to filing suit. Holding differently

would frustrate the purpose of the PLRA, which is to require exhaustion prior to the Court's involvement. *Ford*, 362 F.3d at 398-99.

Noting that Plaintiff's general arguments do not warrant denial of summary judgment, the Court will consider whether the grievances before the Court establish exhaustion as to any of the claims pending in this suit.

Grievance **681576**, which complains about events occurring at Barnes Hospital during the relevant time period, is insufficient to establish exhaustion as this grievance was not properly exhausted prior to Plaintiff filing his lawsuit on July 30, 2012 (*See Washington v. Hodges, et al.,* 12-cv-854-NJR-DGW). Importantly, Plaintiff appealed the Regional Director's response to the Central Office on June 21, 2012; however, his appeal was not received until August 7, 2012, *after* Plaintiff filed his lawsuit on July 30, 2012. Pursuant to 28 U.S.C. § 542.18, an appeal is not considered filed until the date it is logged into the Administrative Remedy Index as "received," upon which, the Central Office has forty (40) days to respond to an appeal. As such, Plaintiff was clearly premature in filing his suit before the Central Office had even received his appeal.

Grievance **682036**, which again complains of the events occurring at Barnes Hospital during the relevant time period, is insufficient to establish exhaustion as this grievance was not properly exhausted prior to Plaintiff filing this lawsuit. Specifically, Plaintiff labeled this grievance as "sensitive" and sent it directly to the Regional Director. The Regional Director rejected this grievance on March 29, 2012, finding that it was not sensitive. Plaintiff was directed to file an appeal or seek remedies through the "regular procedure." Plaintiff appealed the Regional Director's rejection to the Central Office, which affirmed the decision. There is no competent evidence that Plaintiff sought remedies through the "regular procedure." Pursuant to

28 U.S.C. § 542.14, if a sensitive request is not accepted by the Regional Director, the inmate may pursue the matter by submitting it to the warden. Thus, a Regional Director's rejection of a "sensitive" grievance is not a final decision and does not satisfy an inmate's exhaustion requirements. Accordingly, in this instance, there was never a decision on the merits of Plaintiff's grievance, and, as such, it was not properly exhausted.

Grievance **683634**, dated April 5, 2012, is also insufficient to establish exhaustion as to any claims pending in this lawsuit. Plaintiff received the Regional Director's response on April 17, 2012, and filed his appeal with the Central Office on July 18, 2012. The Central Office did not receive this grievance until July 25, 2012, a mere five days before Plaintiff filed suit. Pursuant to 28 U.S.C. § 542.18, the Central Office has forty (40) days to respond to an appeal. As such, Plaintiff was clearly premature in the filing of his suit just five days after submitting it for review. Further, this grievance complains of actions taken by "Mrs. Lirios," an individual who is not a defendant in this lawsuit. Accordingly, it is not apparent that this grievance is relevant to any of Plaintiff's pending claims.

Grievance **684572**, dated April 10, 2012, complaining of the loss of Plaintiff's eye patch and interference with an April 11, 2012 doctor's appointment, was not properly exhausted prior to filing this lawsuit. The warden responded to this grievance on April 24, 2012 and Plaintiff appealed the decision to the Regional Director, who responded on May 24, 2012. There is no competent evidence before the Court that this decision was ever appealed to the Central Office. The Court notes Plaintiff testified at the Pavey hearing that he filed a grievance at his institution on April 10, 2012, but never received a response. A review of the record establishes that Plaintiff did receive a response from his institution, to which he promptly appealed. Importantly,

Plaintiff did not indicate that he never received the Regional Director's response. Accordingly, the Court finds Plaintiff's testimony regarding this grievance disingenuous and finds that he failed to properly exhaust his administrative remedies. With respect to the grievance dated April 21, 2012, which Plaintiff asserts was almost a duplicate of his April 10, 2012 grievance, the Court again finds that this grievance was not exhausted prior to filing this lawsuit. Plaintiff's April 21, 2012 grievance was never file stamped, and the institution has no record of it having been filed.

Grievance **685752**, complaining of the events occurring at Barnes Hospital during the relevant time period, is insufficient to establish exhaustion as this grievance was not properly exhausted prior to Plaintiff filing this lawsuit. Specifically, Plaintiff labeled this grievance as "sensitive" and sent it directly to the Central Office. The Central Office rejected this grievance on April 24, 2012 finding that it was not sensitive. Plaintiff was directed to file an appeal or seek remedies through the "regular procedure." There is no competent evidence that Plaintiff sought remedies through the "regular procedure." Accordingly, there was never a decision on the merits of this grievance and, as such, it was not properly exhausted prior to filing this lawsuit.

Grievance **686319**, complaining of the events occurring at Barnes Hospital during the relevant time period, is insufficient to establish exhaustion as this grievance was not properly exhausted prior to Plaintiff filing this lawsuit. Specifically, Plaintiff labeled this grievance as "sensitive" and sent it directly to the Regional Director. The Regional Director rejected this grievance on April 27, 2012, finding that it was not sensitive. Plaintiff was directed to file an appeal or seek remedies through the "regular procedure." Plaintiff appealed the rejection to the Central Office, which affirmed the Regional Director's decision on July 23, 2012. There is no

competent evidence that Plaintiff sought remedies through the "regular procedure." Accordingly, there was never a decision on the merits of this grievance and, as such, it was not properly exhausted prior to filing this lawsuit.

Grievance **694011** clearly does not pertain to the claims in this lawsuit. This grievance, dated June 14, 2012, concerns actions of Unit Manager Robinson and Warden Cross, individuals not a party to this lawsuit, related to their transfer of Plaintiff to a more restrictive prison. As these events are not at issue here, the Court declines to determine whether this grievance was properly exhausted prior to the filing of this lawsuit.

Accordingly, based on a review of the evidence before the Court, it is apparent that Plaintiff either failed to file a grievance regarding claims in this lawsuit, failed to properly appeal or file grievances related to his claims, or failed to wait until after the administrative process concluded before filing suit.

### RECOMMENDATIONS

For the foregoing reasons, it is **RECOMMENDED** that the Motions for Summary Judgment filed by Defendants Frank Fester, Jason Jones, B. Auterson (Doc. 33), David Goldsborough (Doc. 53), and Steven Hoffmeier (Doc. 60) be **GRANTED**, that this case be **DISMISSED without prejudice**, and that the Court adopt the foregoing findings of fact and conclusions of law.

Pursuant to 28 U.S.C. § 636(b)(1) and SDIL-LR 73.1(b), the parties shall have fourteen (14) days after service of this Report and Recommendation to file written objection thereto. The failure to file a timely objection may result in the waiver of the right to challenge this Report and Recommendation before either the District Court or the Court of Appeals. *Snyder v. Nolen*, 380

F.3d 279, 284 (7th Cir. 2004); *United States v. Hernandez-Rivas*, 348 F.3d 595, 598 (7th Cir. 2003).

**DATED: July 13, 2015**

**DONALD G. WILKERSON**
**United States Magistrate Judge**